**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

ST. CROIX SURGICAL SYSTEMS, LLC,

        Plaintiff,

   v.

CARDINAL HEALTH, INC.,

        Defendant.

C.A. No. 2:17-CV-00500-JRG-RSP

Oral Argument Requested

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER RULES
12(b)(2) AND 12(b)(3) OR TO TRANSFER PURSUANT TO  28 U.S.C. §1404(a)**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.   FACTS .............................................................................................................. 2

   A.  CHI's Business and Activities with Respect to the Infringing Mynx Device .................... 2

   B.  Defendant's Acquisition of AccessClosure ......................................................... 5

   C.  Defendant's Business Activities in the Forum State .............................................. 6

   D.  Defendant's Sales and Marketing of the Infringing Products in This Forum ...................... 7

   E.  Witnesses and Evidence Associated with the Infringing Products ...................................... 8

III.  ARGUMENT ................................................................................................... 8

   A.  Legal Standards ............................................................................................. 9

   B.  The Court Has Personal Jurisdiction Over CHI ................................................... 11

      1.  The Court Has General Jurisdiction over Defendant ...................................... 11

      2.  Texas Has Specific Jurisdiction over Defendant .......................................... 12

      3.  Defendant Is the Correctly Named Party ................................................... 13

   C.  Venue Is Proper in This District ...................................................................... 15

   D.  Transfer to the Northern District of California Is Not Warranted ...................................... 15

   E.  Plaintiff Should Be Allowed Limited Discovery on Matters of Personal Jurisdiction and
   Venue ......................................................................................................... 19

IV.  CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
    968 F. Supp. 2d 852 (E.D. Tex. 2013)..................................................................18

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)..........................................................................12

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) ..............................................................................12

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda
    of N. Am., Inc.*, No. 6:11-cv-34-LED-JDL,
    2012 U.S. Dist. LEXIS 114502 (E.D. Tex. Apr. 19, 2012)................................16

*Geotag, Inc. v. Frontier Communs. Corp.*,
    No. 2:10-cv-265-TJW, 2011 U.S. Dist. LEXIS 104901
    (E.D. Tex. Sep. 15, 2011) ...................................................................................11

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
    No. 5:08CV26, 2009 U.S. Dist. LEXIS 34767 (E.D. Tex. Mar. 26, 2009)........10

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
    995 F. Supp. 2d 587 (N.D. Tex. 2014) ...............................................................19

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................10

*Kranos IP Corp. v. Riddell, Inc.*,
    Civil Action No. 2:17-cv-443-JRG,
    2017 U.S. Dist. LEXIS 138108 (E.D. Tex. Aug. 28, 2017) .................................9

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007).............................................................................9

*Mohamed v. Mazda Motor Corp.*,
    90 F. Supp. 2d 757 (E.D. Tex. 2000)..................................................................12

*Nuance Communs., Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010).............................................................................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017)...................................................................................10,14

*Trintec Indus. v. Pedre Promotional Prods.*,
    395 F.3d 1275 (Fed. Cir. 2005).............................................................................12

*Taishan Gypsum Co. v. Gross*
  (*In re Chinese-Manufactured Drywall Prods. Liab. Litig*.),
  753 F.3d 521 (5th Cir. 2014) ...........................................................................14

## OTHER AUTHORITIES

28 U.S.C. § 1404 .............................................................................................10,14

## I.      INTRODUCTION

Plaintiff St. Croix Surgical Systems, LLC (St. Croix), hereby submits its opposition to Defendant Cardinal Health, Inc.'s ("CHI") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), and 28 U.S.C. § 1404(a).  (Dkt. No. 12.)

Defendant's Motion should be denied.  The evidence shows that St. Croix has named the correct defendant, CHI is subject to personal jurisdiction in this Court, venue is proper in this forum, and a transfer is not warranted for convenience of the parties or in the interest of justice.

CHI holds itself out in the industry and marketplace as the manufacturer, seller, and distributor of the Mynx® Vascular Closure ("Mynx") devices.  At a minimum, it operates through numerous opaque subsidiaries to perform these functions.  A number of those subsidiaries have regular and established places of business within this judicial District and appear to have a direct role in the marketing, sales, quality assurance, regulatory affairs and distribution of the Mynx devices.  In the same way, CHI markets and sells Mynx devices to hospitals and trains medical professionals on how to properly use the Mynx devices on patients who are citizens of this District, apparently using employees who are also situated in this District.  After availing itself to the benefits of the workforce and marketplace within this District and performing relevant marketing, sales, quality assurance, regulatory affairs and distribution activities within this District, Defendant cannot now claim that jurisdiction or venue are improper.

Defendant also fails to meet its burden to show that Plaintiff's choice of forum should be disturbed, and that another forum is clearly more convenient.  It has mischaracterized the importance of St. Croix being a Minnesota limited liability company and attempted to obfuscate the fact that the evidence and witnesses that are located in multiple states, including this District—not just in Ohio where it is incorporated, or in the Northern District of California where

its wholly owned subsidiary Cardinal Health Interventional Solutions (formerly AccessClosure) is located.  (*See* Exhibit 1 at 1.)

Alternatively, St. Croix asks that the Court authorize limited discovery before deciding Defendant's Motion, including into the nature of the substantial marketing, sales, quality assurance, regulatory affairs, and distribution activities that Defendant appears to be performing within this District.  In advance of filing this Motion, Cardinal Health declined to provide information about the corporate structure of the Cardinal Health group of companies, as well as the roles of entities within this District that appear to play a major role in the marketing, sales, quality assurance, regulatory affairs, and distribution of the products at issue.  Rather than provide that information so that St. Croix could evaluate the jurisdictional and venue issues, Defendant filed this Motion.  At a minimum, St. Croix should be able to seek that information in discovery, so that the parties and Court can determine the nature and scope of Defendant's relevant activities within this District and elsewhere.

## II.     FACTS

### A.     CHI's Business and Activities with Respect to the Infringing Mynx Device

Defendant CHI is a corporation organized and existing under the laws of the State of Ohio. (Dkt. 4 at 1.)   CHI bills itself as the company responsible for its own activities.  The first paragraph of the "About Us" page on Cardinal Health's website states:

> Headquartered in Dublin, Ohio, Cardinal Health, Inc. (NYSE: CAH) is a global, integrated healthcare services and products company, providing customized solutions for hospitals, health systems, pharmacies, ambulatory surgery centers, clinical laboratories and physician offices worldwide.

(Exhibit 10.)

Evidence indicates that CHI operates facilities within this District which are responsible for marketing, sales, quality assurance, regulatory affairs, distribution, and training of medical professionals on use of the devices.  CHI currently has ninety-one job openings in Texas, many

of which include senior management positions and roles in sales, marketing, distribution and training. (Ex. 12 at 2-6.)  In Lewisville alone, CHI has openings for Senior Data Analyst, Business I (Business Intelligence), Senior Engineer – BI (Business Intelligence), Senior Engineer – Software Engineering – Data Population, Account Manager – Key Accounts, Senior Product Manager – Product and Solutions Manager, and Manager – Customer Service Management, and Senior Specialist – Learning Delivery. (*Id.*)    In Grand Prairie CHI has five openings in product distribution (e.g., warehouse operations). (Ex. 12 at 1, 4, 6.) At unspecified locations in Texas CHI has openings for VP – Managed Care and Business Development, Principal Engineer – Supplier Quality, and Principal Scientist – Regulatory Affairs and Product Development.  (Ex. 12 at 2-6.)

CHI maintains regular and established places of business of throughout Texas, including in the cities of Dallas, Fort Worth, and further including regular and established places of business in this District, including in the cities of Lewisville, Sherman, Texarkana, Roanoke, Jacksonville, and Grand Prairie.  (Ex. 12.)  CHI also employs sales representatives in the State of Texas tasked with servicing territories throughout Texas.  (Dkt. 4 at 2.)

CHI identifies itself on its website as CardinalHealth, and uses the following trademark in commerce:



This trademark is used consistently throughout CHI's website, on its press releases, on its products, and on buildings it occupies, thereby, communicating to consumers that this is how it will be identified in the marketplace.  The purposeful positioning of this trademark on all things associated with CHI not only support that it is in control of its subsidiaries, but also that it

intends for consumers associate this sole trademark with CHI and its subsidiaries, and for customers to identify CHI as the sole source of all goods and services in the marketplace.

CHI represents itself, and the relevant subsidiaries, as one entity operating under the tradename Cardinal Health, which it originally filed as a fictitious name with the State of Ohio. (S*ee Ex*. 16-21, 27.)

Multiple sources of evidence demonstrate that CHI participates directly in the development, marketing, and sale of Mynx devices.  For example, in a press release titled "***Cardinal Health*** Ships 2 Millionth Mynx™ Vascular Closure Device: Company Celebrates Milestone After Recent Acquisition of AccessClosure," CHI's discusses its satisfaction with the marketplace response.  Vice President of Clinical Affairs at Cardinal Health stated, "We are gratified to see that Mynx has generated such a strong presence . . . [and] believe the success of Mynx in the marketplace is a result of its unique combination of innovative design, outstanding outcomes and cost effectiveness."  The end of the press release provides the reader with an About Cardinal Health section.  (Exhibit 13.)

In response to the Class 2 Device Recall for the MynxGrip Vascular Closure device initiated on July 13, 2016, which listed AccessClosure, Inc. as a CHI company, the following action was reported by the FDA:

> ***Cardinal Health*** sent an Urgent Medical Device letters dated July 15, 2016 to affected customers. The letters provided the reason for recall and the exact lot number and quantity shipped to each location. Customers were instructed to quarantined affected products and complete and return the Field Action response form indicating the number of devices that will be returned. Instructions for returning the devices are included with an RMA number and Fed Ex airbill. Questions should be directed to Customer Advocacy at 408-610-6570 between 9 am and 5 pm PST.

(Exhibit 14) (emphasis added).

As recent as January 2017, CHI issued a statement in response to potentially negative data revealed in a surveillance study conducted by the U.S. Food and Drug Administration regarding "Cardinal Health's Mynx vascular-closure device" wherein CHI stated,

> "Patient safety is our number one priority.  We have data that supports the safety and efficacy of our vascular closure devices.  We stand behind our products."

(Exhibit 15 at 2.)

### B.    Defendant's Acquisition of AccessClosure

CHI acquired AccessClosure on May 12, 2014.  (Ex. 1 at 1.)  According to CHI's own documents, after the acquisition, the entity formerly known as AccessClosure became Cardinal Health Interventional Solutions.  (Ex. 1 at 2.)

In an industry publication around the time of the acquisition, then CEO of AccessClosure, Gregory Casciaro, reported that "becoming part of Cardinal Health will lead to more rapid growth," and attributed Cardinal Health's 33,000 employees as a factor that would "grow the business more rapidly.  (Ex. 2 at p. 1 ¶ 2-3.)  According to CHI's current website, the accused Mynx devices are marketed as products fitting into its Cardiovascular family.  (Exhibit 3.)  In its informational disclosures about the Mynx devices, CHI does not reference "AccessClosure" at all, despite its assertions within the Motion that it is merely a holding company which does not control AccessClosure's day to day operations.  (*Id*.)

Prior to AccessClosure being acquired and controlled by CHI, it employed sales staff for the Mynx devices in a region broadly referred to as the "South Texas Region." (Exhibit 4 at 2.) The AccessClosure sales professionals were responsible for sales and promotion marketing to various medical personnel and hospital purchasing departments.  (Ex. 4 at 2.)  After the acquisition of AccessClosure by CHI, it not only directly employed sales staff under the CHI umbrella (through Defendant's wholly owned subsidiary Cordis), but it also provided nurse educators tasked with "provid[ing] clinical and educational support to [] cardiologists and []

radiologists" and Territory Managers in the State of Texas.  (Exhibit 5.)  CHI has not been

forthcoming regarding the size of its territories or any corporate structure under which CHI

might further control activities related to the Mynx device.

    **C.**    **Defendant's Business Activities in the Forum State**

Defendant has ninety-one Texas job postings currently listed on its website (Ex. 12), with

approximately seventy-one percent of those positions having physical real property locations

throughout the State of Texas.  Specifically CHI, per its website, has physical offices located at

200 Blossom St., Webster, TX, 7400 Barlite Blvd., San Antonio, TX,  1705 Jackson St.,

Richmond, TX, 2555 Jimmy Johnson Blvd., Port Arthur, TX, 2730 S Edmonds Ln., Lewisville,

TX, 200 McKnight St., Jacksonville, TX, 151 Northpark Central Dr., Houston, TX, 2801

Gessner Rd., Houston, TX, 1330 Enclave Pkwy., Houston, TX, 7859 Almeda Rd., Houston, TX,

1401 St. Joseph Pkwy., Houston, TX,  3080 W Interstate 20, Grand Prairie, TX, 5400 Sandshell

Dr., Fort Worth, TX, and 1 Butterfield Tr., El Paso, TX.

The building located at 200 McKnight St., Jacksonville, TX 75766 has permanently

affixed signage at the front indicating that Cardinal Health is the occupant of the building,

directing employees and visitors of Cardinal Health, and making a statement about Cardinal

Health's progress. (Exhibit 16.)  The building located at 151 Northpark Dr., Houston, TX 77073

has permanently affixed signage facing Northpark Dr. indicating that Cardinal Health is the

occupant of the building.  (Exhibit 17.)  The building at 1330 Enclave Pkwy., Houston, TX

77077 has permanently affixed signage indicating that Cardinal Health is the occupant.  (Exhibit

18.)  The building at 7859 Almeda Rd., Houston, TX 77054 has permanently affixed signage

indicating that Cardinal Health is the occupant. (Exhibit 19.)  The building at 3080 W Interstate

20, Grand Prairie, TX 75052 has permanently affixed signage indicating that Cardinal Health is

the occupant.  (Exhibit 20.)  The building located at 1 Butterfield Trail Blvd., El Paso, TX 79906

has a permanently affixed sign indicating that Cardinal Health is the occupant.  (Exhibit 21.)

As explained above, many of the job openings in Texas and specifically within this

district appear to relate to marketing, business analytics, sales, distribution and training.  (Ex.

12.)  This is precisely what would be expected when a large medical device company acquires a

medical device start-up.  The acquiring company, in this case CHI, normally brings to bear its

substantial marketing, sales, quality assurance, regulatory affairs, and distribution network to

promote sales of the devices.  This is central to the value proposition underlying CHI's

acquisition of AccessClosure.  Starting at the time of the acquisition, CHI's marketing, sales,

quality assurance, regulatory affairs, and distribution operations have been much more central to

the success of the Mynx devices than any legacy product design and engineering that may have

occurred in California. The jobs are posted on CHI's website, which bears a copyright

registration for Cardinal Health and references Cardinal Health, Inc. on its "About Us" page -

and no other entity.  (Ex. 10 at 3.)

> ### D.     Defendant's Sales and Marketing of the Infringing Products in This Forum

There is no legitimate dispute that CHI sells and markets its Mynx devices within this

forum.  Indeed, it appears that Texas may be one of the hubs of CHI's marketing, sales, quality

assurance, regulatory affairs, and distribution operations related to the Mynx devices.

As noted above, CHI has numerous employees in Texas and in this District who fulfill

various roles in the marketing, sales, quality assurance, regulatory affairs, and distribution of its

products, including sales, clinical presentations, and educational support to hospitals and

physicians in this forum.  CHI's Mynx devices are then used on patients who are citizens in

Texas including this District.  (Exhibit 6.)  While CHI asserts that it actually does none of this,

that assertion flies in the face of all the evidence above showing CHI's direct participation.

7

E.       **Witnesses and Evidence Associated with the Infringing Products**

As is typical in the context of an acquisition of a medical device start-up by a large medical device company, the focus of CHI's efforts since the acquisition appears to have been on marketing, sales, quality assurance, regulatory affairs, and distribution.  Those activities have occurred largely, if not primarily, in this State and in this District.  The legacy R&D associated with the early Mynx devices are of comparatively little importance in the context of a mature medical device being marketed and distributed by a major medical device company.

Notwithstanding this, CHI seeks to limit the focus of relevant witnesses to those in the former AccessClosure's principal place of business in Santa Clara, California.  Although AccessClosure had an office in Santa Clara, CHI has only identified two relevant witnesses with knowledge regarding research and development of the Mynx devices.  (Dkt. 12 at 10.)  Based on the evidence available, CHI's limited view of its own operations ignores many relevant witnesses throughout the country (which undermine any particular "convenience" in California).  Indeed, CHI is a global company providing its extravascular closure devices to hospitals, surgery centers, clinical laboratories, and other medical facilities throughout North America.  (Ex. 7 at 2.) Many of CHI's most important activities related to the Mynx devices appear to occur within this State and within this District.   CHI has over a dozen relevant job openings in marketing, sales, quality assurance, regulatory affairs and distribution in this District.  (Ex. 12.)  That would suggest a workforce on the order of one hundred or more in these roles.  (Ex. 12.)  Many or most could relate directly to the Mynx devices.

III.   **ARGUMENT**

CHI makes three arguments in its Motion.  First, it argues that this Court has no personal jurisdiction over CHI.  Second, it argues that venue is improper because CHI does not reside in this judicial district.  Third, it argues that the case should be transferred to the Northern District

of California as a more convenient venue.  Flowing throughout these arguments is the notion that CHI is not the appropriate party in the case.

None of these arguments has merit.  Evidence indicates that CHI performs and controls the activity that gives rise to liability, that it resides in this district, and that this Court is the more convenient forum.  At a minimum, St. Croix should be permitted discovery to ascertain the corporate structure of CHI and the relevant activities, so that the parties and Court can address the Motion with equal access to facts.

### A.     Legal Standards

Regional circuit law applies to motions to dismiss for failure to state a claim. *McZeal v. Sprint Nextel Corp*., 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).

There are two possible sources of information for consideration in the court's venue analysis: (1) the well-pleaded facts in a plaintiff's complaint; and (2) affidavits or evidence submitted by a defendant in support of its motion to dismiss (or by a plaintiff in response thereto).  *Kranos IP Corp. v. Riddell, Inc*., Civil Action No. 2:17-cv-443-JRG, 2017 U.S. Dist. LEXIS 138108, at *4 (E.D. Tex. Aug. 28, 2017) (quotations omitted).

*Personal Jurisdiction:* "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230-31 (Fed. Cir. 2010) citing *3D Sys., Inc. v. Aarotech Labs., Inc*., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998).  Whether a defendant purposefully established minimum contacts in the forum state is paramount in establishing that personal jurisdiction is appropriate in the forum.  *Id*. at 1231.

When evaluating whether sufficient contacts exist between a defendant and the forum to support personal jurisdiction over the defendant, courts often consider specific jurisdiction and general jurisdiction. *Viam Corp. v. Iowa Export-Import Trading Co*., 84 F.3d 424, 427 (Fed. Cir. 1996). "Specific jurisdiction exists when the nonresident

defendant has 'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). General jurisdiction exists when defendant's contacts are unrelated to the cause of action but are "continuous and systematic" and "substantial*." Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.,* No. 5:08CV26, 2009 U.S. Dist. LEXIS 34767, at *11 (E.D. Tex. Mar. 26, 2009).

**Venue:**  Under 28 U.S.C. § 1400(b) as interpreted by the Court in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), venue is proper where the defendant has committed acts of infringement and has a regular and established place of business.

**Convenience:**  District courts have the authority to transfer a case "[f]or the convenience of the parties and witnesses."  28 U.S.C. § 1404(a).  Transfer is appropriate only if "the transferee venue is clearly more convenient" after review of both private and public interest factors.  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  The private interest factors are:

> "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Id*. (quoting *In re Volkswagen AG* (Volkswagen I), 371 F.3d 201, 203 (5th Cir. 2004)).

The public interest factors are:

> "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id*. (quoting *Volkswagen I*, 371 F.3d at 203) (alteration in original).

**B.      The Court Has Personal Jurisdiction Over CHI**

**1.      The Court Has General Jurisdiction over Defendant**

This Court may exercise general jurisdiction over CHI because of its extensive activities and business within the State of Texas.  To establish that a court has general jurisdiction, a plaintiff must (1) show that the defendant has purposefully availed itself to the benefits and protections of the forum state by establishing minimum contacts, and (2) the excise of such jurisdiction would not counter fair play and substantial justice.  *Geotag, Inc. v. Frontier Communs. Corp.*, No. 2:10-cv-265-TJW, 2011 U.S. Dist. LEXIS 104901, at *9 (E.D. Tex. Sep. 15, 2011).  Even though the plaintiff has the burden of showing that defendant is subject to personal jurisdiction, a prima facia showing is all that is required where jurisdictional discovery has not been conducted.  *Id*.

Here, CHI appears to have scores if not hundreds of relevant marketing, sales, quality assurance, regulatory affairs and distribution professionals in Texas (Ex. 12), sells its products to hospitals in Texas and medical professionals licensed in Texas (Ex. 6), and provides educational services to the hospitals and medical professionals in Texas (Ex. 5 (through Defendant's wholly owned subsidiary Cordis.)  Together, these factors establish that CHI's contacts with this jurisdiction are "continuous and systematic," and that Defendant has purposefully availed itself to the forum state. This Court's exercise of general jurisdiction over Defendant would not offend fair play and substantial justice.

CHI complains that it is not conducting this activity and business, but its own website, marketing materials, business signage, and other information contradict this argument.  CHI should not be able to avail itself to the benefits of selling in Texas' markets, yet avoid being haled into Court when its activities result in harm to others.  To the extent CHI attempts to

submit information that undermines its public statements, that effort simply highlights the need for limited discovery here, as set forth below.

### 2.    Texas Has Specific Jurisdiction over Defendant

Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from or are directly related to the cause of action.  *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 762 (E.D. Tex. 2000).  The court can exercise specific jurisdiction over foreign defendants where the defendant has purposefully directed its activities at the forum resulting in litigation where the plaintiff's injury was related to those activities.  *Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010).  "The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state." *Id*. citing *Burger King Corp.*, 471 U.S. at 462, 472.  "Specific jurisdiction arises out of' or 'relates to' the cause of action even if those contacts are isolated and sporadic." *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) citing *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *Burger King Corp.*, 471 U.S. at 462, 472-73, and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)).

A plaintiff can meet his burden of proof regarding personal jurisdiction by presenting a prima facia case of jurisdiction where the district rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing.  *Mohamed*, 90 F. Supp. 2d at 757, 762 citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir.1996) (quotations omitted).

In this instance, St. Croix's claims for patent infringement are directly related to Defendant's contact with the forum State.  The patents in issue require that steps of the methods claimed be performed.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023

(Fed. Cir. 2015). CHI markets and sells its Mynx devices to medical practitioners licensed in the State of Texas and to hospitals operating under licenses granted by the State of Texas.  Hospitals and medical practitioners licensed in the State of Texas perform procedures using the Mynx devices on patients in Texas.  (Dkt. 4 at 18, 29, 33.)  Notably, the Mynx devices are federally regulated medical devices that must have established Instructions for Use and related regulatory documents.  St. Croix expects that such regulatory prescriptions are found in contracts between CHI and the relevant hospitals and doctors.  As such, CHI is directly responsible for infringing acts within this District.

CHI should not benefit from selling its Mynx devices to medical practitioners and hospitals licensed by the State of Texas, employing marketing, sales, regulatory affairs and quality assurance representatives based in Texas, and providing product training to doctors in Texas, and then maintain that Texas does not have personal or specific jurisdiction over it.  Again, any CHI arguments that it is not responsible for this activity only highlight the need for discovery.

### 3.      Defendant Is the Correctly Named Party

Defendant CHI is the correctly named party.  Defendant maintains that is "merely a holding company that does not make, sell or offer for sale any product or method."  (Dkt. 12 at 15.)  However, the information on its website, its press release, industry publications, and corporate filings demonstrate otherwise.

Defendant acquired AccessClosure on May 12, 2014.  (Ex. 1 at 2.)  After the acquisition, AccessClosure's name was changed to Cardinal Health Interventional Solutions. (Ex. 1 at 3.)  According to FierceBiotech, an industry publication released on April 2, 2014, CHI's acquisition of AccessClosure and its operations would help to grow its business more rapidly.  (Ex. 2 at 2.)  Currently on its website, **CHI** markets the Mynx devices as part of its Cardiovascular family and

13

does not mention AccessClosure. (Ex. 3.)  Its customers reference Mynx as a "Cardinal Health"

device. (Ex. 6 at 3.)  Its current job listing for Santa Clara, CA make no mention of

"AccessClosure." (Ex. 7.)  The building where AccessClosure was located is now designated by

its signage as Cardinal Health. (Ex. 8.)  Finally, the former AccessClosure's principal executive

offices are located at 7000 Cardinal Pl., Dublin, OH 43017, which is CHI's corporate address.

(*See Ex.* 23, 25, 27.)  The former AccessClosure's corporate officers are also housed at the

Dublin address.  (Ex. 24.)

All of these factors establish that the former AccessClosure is an agent of CHI with

respect to its activities, and that CHI is the correctly named party subject to the personal

jurisdiction of this Court.  *See Taishan Gypsum Co. v. Gross* (*In re Chinese-Manufactured

Drywall Prods. Liab. Litig*.), 753 F.3d 521, 533 (5th Cir. 2014) (finding that there was a

principal-agent relationship between defendant and is parent company where the parent company

manufactured products of the subsidiary, had a presence on the subsidiary's Board, staffed the

subsidiary's personnel, and held itself out at the same entity).  At a minimum, these factors,

when coupled with CHI's opaque corporate structure, highlight the need for discovery, as set

forth below.

The same is true of Defendant's wholly owned subsidiary Cordis Corporation, which

appears to operate under the control and as an agent of CHI.  On Cordis' 2017 annual report filed

with the State of Florida, Cordis lists 7 of its 8 officers as having offices at CHI in Dublin, OH.

(Ex. 9.)  As noted above, CHI holds itself out as conducting activities related to the Mynx

device.  To the extent some of those activities are performed by individuals technically employed

by Cordis, that points to an agency relationship in which CHI is the principle and thus

responsible for the relevant activity.

14

### C.    Venue Is Proper in This District

Venue is proper in this District as this action for patent infringement has been filed in a judicial district where Defendant has committed acts of infringement and has several regular and established places of businesses.  *TC Heartland LLC*, 137 S. Ct.  at 1514; 28 U.S.C.S. § 1400.

There is no doubt that acts of infringement take place in this District.  Since the infringing Mynx devices are being marketed and sold to hospitals and medical professionals licensed in Texas, infringement is taking place in this jurisdiction. (Dkt. 4 at 18, 29, 33.)

CHI's real argument is that it has no place of business in this District.  But as set forth above, CHI has several regular and established places of business in this District.  According to the website hosted, maintained, and copyrighted by CHI, it has locations throughout the state of Texas.  Defendant's job postings listing CHI as the employer and providing real property addresses in the forum state are indicative of its established places of business. (Ex. 12 at 2.) The job postings do not mention any of CHI's subsidiaries, but refence CHI as the employer. Further, several of the real property addresses listed on CHI's website have permanently affixed signage bearing CHI's name.

Defendant argues that it is a holding company without employees and real property in the State of Texas, but CHI holds itself out as the entity performing these activities.  This is evidenced, for example, by it being the sole company identified on the signage in various locations throughout this state and it being referenced on the Career section of its website as the sole employer offering job listings.  (*See Ex*. 11-12, 16-21.)

### D.    Transfer to the Northern District of California Is Not Warranted

Defendant moves for a transfer of this case to the Northern District of California, but that venue is no more convenient than Eastern District of Texas.  To the contrary, many of CHI's most important activities related to the Mynx devices occur in the State of Texas and in this

District.  These marketing, sales, quality assurance, regulatory affairs, and distribution activities are much more important to the Mynx product offering than any legacy R&D operations which may have occurred in California.

Specifically, Defendant CHI is an Ohio corporation (Dkt. 12 at 6) with a place of business in Ohio; the entity formerly known as AccessClosure, and CHI's wholly owned subsidiary, is a Delaware Corporation with a place of business in Santa Clara, CA (Dkt. 12 at 9); Cordis, a wholly owned subsidiary of CHI, is a Florida Corporation with a place of business in Milpitas, CA (Dkt. 12 at 11); Plaintiff is a Minnesota limited liability company (Dkt. 4 at 1); the two named witnesses purportedly having information regarding research and development of the Mynx devices are located in California; three other potential witness are located in Illinois and Minnesota; and Defendant markets, sells to, and educates clients throughout North America.

As such, there is no indication that California is so clearly more convenient as to warrant disturbing St. Croix's choice of forum.  *See Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am.*, *Inc.*, No. 6:11-cv-34-LED-JDL, 2012 U.S. Dist. LEXIS 114502, at *34 (E.D. Tex. Apr. 19, 2012) (denying the defendant's Motion to Transfer where there were multiple locations of witnesses and evidence relevant to the case before the court and finding that no one forum was more convenient).

On the contrary, evidence suggests that many of CHI's employees within Texas perform tasks highly relevant to establishing infringement. (Ex. 6 at 2.)  As discussed above, the most important activities conducted by a major medical company after acquisition of a start-up company are centered around marketing, sales, quality assurance, regulatory affairs, and distribution. (Ex. 12.)  This District appears to serve as one of CHI's hubs for such activities. (Id.)  There is every reason to believe that the Mynx devices are managed at least in substantial

part through this CHI hub, and Defendant has not pointed to any evidence which would refute that premise.  At a minimum, discovery is needed on this issue.

The public and private interest factors also weigh in favor of denying transfer.  The first private interest factor, the relative ease of access to sources of proof, does not favor transfer.  Proof of Defendant's infringement can be easily established in the Eastern District of Texas.  St. Croix asserts infringement of method claims which recite a method of treating a subcutaneous blood vessel wound in a patient comprising establishing a subcutaneous mass proximate the wound; a method of treating a volume of blood for use in closing a subcutaneous arterial wound in a patient; and a method of percutaneously closing a puncture in the wall of an artery of a patient.  As such, key evidence which will center around the manner in which CHI markets to its customers and educates them on using the Mynx devices is relevant to proof of Plaintiff's case.  Much of this information is available in this forum or can be delivered electronically.

The second private interest factor assessing the availability of compulsory process to secure the attendance of witnesses does not favor Defendant.  Defendant has not met its burden of proof regarding nonparty witnesses being available outside of this District.  It cites three nonparty witnesses, two of whom potentially have information regarding prior communications, and one may have information regarding design and development of products not at issue in this matter.  (Dkt. 12 at 12.)  That is all.

Defendant does not mention that its customers, namely the hospitals and medical practitioners, to whom it marketed, sold, and instructed on the use of the infringing Mynx devices reside in this District and in various other places throughout the country.  As such, many of the nonparty witnesses relevant St. Croix's claims for patent infringement reside or do business within this district and would not be required to travel a great distance or incur

substantial expense.  Because the nonparty witnesses are spread throughout many judicial districts, there is no one district that is most convenient.

The third private interest factor regarding the cost of attendance for willing witnesses does not favor transfer.  Party witnesses are located in many different places ranging from California to Florida.  As such, saving travel time for one witness will likely result in a burden for another.  If this action were litigated in the Northern District of California, overall travel times and expense would likely increase relatively to the centrally-located Texas venue.  (Exhibit 25.)

The fourth private interest factor regarding expeditious and inexpensive adjudication does not favor transfer.  In this prong of a transfer of venue analysis, "judicial economy can be a 'paramount consideration'." *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 858 (E.D. Tex. 2013).  Judicial economy favors the Eastern District of Texas.

Just one month after the Supreme Court's ruling in *TC Heartland*, patent infringement filings dropped considerably, while filings within the Northern District of California increased substantially.  (Exhibit 26.)  This shift in filings will likely make the Eastern District of Texas a much more suitable venue for purposes of judicial economy.  A transfer to California would in all likelihood substantially lengthen the time required for this matter to proceed to trial and will increase the burden on an already strained District.

This Court's familiarity with patent litigation and claim construction also supports retaining the case in this District.  *Affinity Labs of Tex.*, 968 F. Supp. 2d at 852, 858.

The public interest factors are also relevant to a Motion for transfer of venue.  The first public interest factor relates to the administrative difficulties flowing from court congestion.  But after *TC Heartland*, there is a greater chance of congestion in the Northern District than in this Court.  Moreover, this Court has vast experience handling a high volume of

cases, which should facilitate even easier administration following *TC Heartland*.  Thus, this factor favors retaining the case in this Court.

The second public interest factor local interest does not favor transfer.  CHI and its Mynx devices are being administered on cardiac patients in this District by Texas medical professionals in its hospitals.  Moreover, CHI uses the State of Texas and this District as one of its hubs for marketing, sales, quality assurance, regulatory affairs and distribution.  CHI has ninety-one job openings spanning the entire state in these and other operational roles.  As such, this community is highly related to the matter before the Court.

The third public interest factor relates to the familiarity of the forum with the law that will govern the case.  This factor clearly warrants retaining the case in this Court.

The forth public interest factor is moot because this case arises under federal law; therefore, there are no conflict of laws issues.

Infringement of the patents in issue not only involves CHI who makes the infringing Mynx devices, uses the infringing Mynx devices in its educational demonstrations to its prospective and existing customers, and sells the infringing Mynx devices, but it also involves its customers who CHI causes the infringing Mynx devices to be used.  As such, there is no forum choice that will circumvent inconvenience.

### E.      Plaintiff Should Be Allowed Limited Discovery on Matters of Personal Jurisdiction and Venue

Plaintiff should be allowed to conduct limited discovery on the matters of personal jurisdiction and related venue.  Defendant maintains that (a) it is not the correct entity, and (2) venue is only proper in the Northern District of California for what CHI asserts are the properly named entities, and that the Northern District of California would be more convenient. Each of these assertions is, at a minimum, contradicted by evidence as set forth above. Accordingly, St.

Croix should be permitted limited discovery to test CHI's assertions, understand its corporate structure and operations, and obtain equal access to facts relevant to the Motion.

The Fifth Circuit has held that jurisdictional discovery is appropriate after a plaintiff has made a preliminary showing of jurisdiction.  *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc*., 995 F. Supp. 2d 587, 620 (N.D. Tex. 2014).  Here, Plaintiff's Complaint has more than sufficient factual allegations suggesting that the Court has personal jurisdiction over CHI.  CHI's own press releases and marketing materials from a variety of sources—its annual reports, website, industry publications, employee profiles job postings and geographic evidence —as well as publications from CHI's customers, all support a finding that CHI is a proper party to this action and that venue here is proper.

St. Croix does not seek authorization from the Court to go on a fishing expedition.  Rather, it seeks limited discovery to show that personal jurisdiction is appropriate and that this forum is the correct venue.  Defendants assertions, when compared with the facts stated in Plaintiffs Complaint and this Response and publicly available information, raise numerous questions of fact that can only be resolved by such limited discovery.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion should be denied.  Alternatively, St. Croix should be permitted limited discovery on the matters of personal jurisdiction and venue.

Dated: September 15, 2017

DEVLIN LAW FIRM LLC

By: */s/ Timothy Devlin*
Timothy Devlin (#4241)
tdevlin@devlinlawfirm.com
1306 N. Broom St., 1st Floor
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251


GARDELLA GRACE P.A.
Greg H. Gardella (*pro hac vice* to be filed)
ggardella@gardellagrace.com
Natalie J. Grace (*pro hac vice* to be filed)
ngardella@gardellagrace.com
Gardella Grace P.A.
PO Box 51977
Washington, DC 20091
Telephone: (703) 556-9600
Facsimile: (703) 740-4541

*Attorneys for Plaintiff St. Croix*
*  Surgical Systems, LLC*

21

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on September 15, 2017.

<u>*/s/ Timothy Devlin*</u>
Timothy Devlin

22